[No. A119944. First Dist., Div. Four. Oct. 31, 2008.]

STEPHEN T. DAVIES, Plaintiff and Appellant, v.
SALLIE MAE, INC., et al., Defendants and Respondents.

COUNSEL

Stephen T. Davies, in pro. per., for Plaintiff and Appellant.

Law Offices of Miriam Hiser and Miriam Hiser for Defendant and Respondent Sallie Mae, Inc.

Murphy Austin Adams Schoenfeld, J. Scott Alexander and John E. Fisher for Defendant and Respondent EdFund.

OPINION

**RUVOLO, P. J.**—Stephen T. Davies (Davies) appeals from the trial court's grant of demurrers to his second amended complaint (SAC) without leave to amend. Finding the trial court committed no error in determining Davies's SAC failed to state a cause of action against his student loan note holders, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Davies obtained federal Stafford student loans from respondents Sallie Mae, Inc. (Sallie Mae), and EdFund to fund his education between 1993 and 1997. In connection with his student loans, Davies signed a promissory note. Davies does not dispute his underlying obligation to pay his student loans. In 1998, Davies graduated from law school and his repayment obligations began. From 1998 through 2005, respondents granted his economic hardship deferment requests.

In connection with his deferment requests, between 1998 or 1999, and 2000, respondents requested, and Davies provided, verification of his income and economic hardship status. Pursuant to this request, Davies's then employer, attorney Steven A. Schectman (Schectman), drafted letters substantiating Davies's minimum income and employment status.[1]

In October 2005, respondents placed Davies's student loans in default and commenced collection activities. Davies filed his original complaint, drafted on a Judicial Council form, filed June 22, 2006, alleging that as a result of his employer's letters, a contract was formed between Schectman and respondents to which Davies was a third party beneficiary. He requested contract reformation, declaratory relief affirming the alleged contract to which Davies was a third party beneficiary, and other equitable relief. On January 11, 2007, the trial court sustained respondent EdFund's demurrer for failure to state a cause of action with leave to amend.

Davies filed his first amended complaint (FAC) on February 22, 2007. In the FAC he again alleged a third party beneficiary breach of contract, declaratory relief, and equitable relief. After a hearing on April 27, 2007, the trial court sustained respondents' demurrers to the FAC with leave to amend, again for failure to state a cause of action.

Davies filed his SAC on May 17, 2007. On August 2, 2007, the trial court issued its ruling sustaining respondents' demurrers without leave to amend as to all causes of action contained in the SAC based on Code of Civil Procedure section 430.10, subdivisions (e) and (f). A judgment of dismissal was entered on September 5, 2007, the notice of entry of judgment was filed on September 10, 2007, and Davies filed this timely appeal.

---

[1] Below is the text of one of the virtually identical letters drafted by Schectman.
"March 13, 2000 [¶] To Whom It May Concern:
"I am writing this letter at the request of Steven T. Davies, S.S.# . . . , to provide documentation of his income in connection with his Economic Hardship Deferment Request. [¶] Mr. Davies is an attorney at my law practice, Pacific Law, based in Eureka, California. Mr. Davies works exclusively, full-time, 40+ hours for Pacific Law working on several large and complex lawsuits on behalf of some 70 Plaintiffs in and around Eureka, California which my practice is exclusively focused on. Mr. Davies does not have outside employment and his responsibilities to Pacific Law require that Mr. Davies devote himself full-time to the litigation at Pacific Law. [¶] Mr. Davies has not received a salary since September, 1998 and will not receive economic compensation for his work until a settlement or court judgment on the cases he is working on, which I anticipate will not occur until August, 2000, approximately. I do, however, provide Mr. Davies with housing and cover his costs for food, some gas, and emergency items. These costs generally run under $200 per month or less. [¶] Since September 1999, I do not maintain employment records for Mr. Davies. We are in the process of formalizing a written employment agreement or formalized compensation agreement, but, at present, we have a non-written agreement that his compensation be fair. [¶] Please call me if you have any questions. [¶] Very Truly Yours, [¶] [/S/ Steven A. Schectman]."

## II. DISCUSSION

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].) "When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true . . . ." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].)

"In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) "Reversible error is committed if the facts alleged show entitlement to relief under *any* possible legal theory. [Citation.]" (*Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 86 [96 Cal.Rptr.2d 383], italics added.)

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (*City of Dinuba v. County of Tulare, supra*, 41 Cal.4th at p. 865.) "The *plaintiff has the burden* of proving that an amendment would cure the defect. [Citation.]" (*Campbell v. Regents of University of California, supra*, 35 Cal.4th at p. 320, italics added.) In reviewing the granting of a demurrer, we review the trial court's result for error, and not its legal reasoning. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631 [27 Cal.Rptr.3d 452].)

The first cause of action alleged in Davies's SAC is breach of contract. He identifies two contracts, and two breaches: (1) respondents breached a contract with Davies's former employer Schectman, to which contract Davies was a third party beneficiary; and (2) respondents breached the terms of the promissory note governing his student loans. The second cause of action is for a judicial declaration stating Davies is the intended beneficiary to an alleged contract between Schectman and respondents and a judicial declaration interpreting certain language in the promissory note. The third cause of action is for equitable relief, alleging that his obligation to pay interest on his

loans accumulated through June 2001 is excusable under legal theories of changed circumstances, impossibility, extrinsic fraud, equitable estoppel and latches.

■ "Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach." (*Hillsman v. Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749–750 [200 Cal.Rptr. 605], fn. omitted.) Moreover, "[t]he rule on demurrer is simply a variation on the well-recognized theme that 'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' [Citations.]" (*Id.* at p. 750, fn. 4.)

In his opening brief on appeal, Davies concedes that the letters written by Schectman to Davies's student loan providers did not create a contract "and, that is no longer an issue in the action." However, in his reply brief, Davies addresses the time bar issue surrounding his third party beneficiary cause of action, and half-heartedly addresses the elements of a contract. Regardless, as the trial judge made clear in the hearing on respondent EdFund's first demurrer, "[t]here's nothing on the face of [the letter], though, that gives rise to any sort of promise." We agree. None of the letters written by Schectman is a contract. They do not fit within the definition of a contract: "an agreement to do or not to do a certain thing." (Civ. Code, § 1549.) Furthermore, there is no consideration provided for any alleged "promises" by either party to the alleged contract. Schectman promises to do nothing—this is plain. Schectman drafted the letters merely to substantiate Davies's repeated economic hardship deferment requests. Because the letters fail to meet the definition of a contract, the trial court did not err in sustaining the demurrers to Davies's allegation of breach of contract under a third party beneficiary theory. Therefore, we affirm the trial court's sustaining the demurrers based on Code of Civil Procedure section 430.10, subdivisions (e) and (f).

Davies's argument for breach of the promissory note contract stems from the language of the default and acceleration clause in that document. "Acceleration and Default [¶] At the option of the holder, the entire unpaid balance shall become immediately due and payable upon the occurrence of any one of the following events: . . . (iv) I default on the loan(s). [¶] The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after the holder has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan(s), and the guarantor reasonably concludes I no

longer intend to honor my repayment obligation, provided my failure has persisted for at least 180 days for payments due monthly or 240 days for payments due less frequently than monthly. If I default, the guarantor may purchase my loan, and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable. . . ." Under "Governing Law and Notices," the note indicates that it is to be "interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), other applicable federal statutes and regulations, and the guarantor's policies." The note also states that "[a]ppli-cable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note."

Davies's argument on appeal is that the demurrers were improperly sustained because he alleged sufficient facts, which we assume to be true, to show either that (1) respondents breached the terms of this promissory note vis-à-vis respondents' forbearance or deferment policy or (2) respondents did not reasonably conclude he "no longer intend[ed] to honor [his] repayment obligation[s]" under the terms of the note. Respondents contend that Davies's suit is a claim arising under the Higher Education Act of 1965 (HEA) (20 U.S.C. § 1070 et seq.) and that there is no private right of action under the HEA. Therefore, as a matter of law, Davies cannot state a claim.

*Parks School of Business, Inc. v. Symington* (9th Cir. 1995) 51 F.3d 1480, 1484–1485 (*Parks School*) involved a school terminated from the state's loan guarantee program. Parks is a private junior college, with a campus in Arizona. "USAF [United Student Aid Funds] . . . [is] Arizona's designated guarantor of student loan programs. All of USAF's government funding comes from the federal government. USAF manages and operates a program for the guarantee of loans made by participating lenders on behalf of Arizona residents and others who are attending eligible institutions of higher learning in the State of Arizona. Parks contends that it was . . . an eligible institution by virtue of its ongoing participation agreement with the Secretary . . . of Education. [Citation.] [¶] . . . USAF terminated Parks' participation in the Arizona loan guarantee program." (*Id.* at p. 1483, fn. omitted.) The district court granted defendant's demurrer, and the Ninth Circuit affirmed.

■ To determine Parks School had no private right of action under the HEA, the court applied the "four-factor test enunciated by the Supreme Court in *Cort v. Ash* [(1975)] 422 U.S. 66 [95 S.Ct. 2080, 45 L.Ed.2d 26]." (*Parks School, supra*, 51 F.3d at p. 1484.) Those factors are whether (1) the plaintiff is one of the class for whose benefit the statute was enacted; (2) the legislative history indicates an intent to create or deny a private right of

action; (3) "implying a right of action would be consistent with the purposes of the legislative scheme"; and (4) "the cause of action is one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law. [Citation.]" (*Ibid.*)

The court in *Parks School* found the statute was enacted to benefit students. (*Parks School, supra,* 51 F.3d at p. 1484.) The court determined that Congress was silent as to a private right of action. However, the court determined that implying a private right of action would be inconsistent with the legislative scheme, since it would deter lenders from participating in the program. (*Id.* at p. 1485.) Additionally, the court noted that where a statute *already* has an enforcement mechanism, courts are wary of inferring a private right of action. (*Id.* at p. 1484.)

The court went on to identify the HEA's enforcement mechanism as 20 United States Code section 1082. That section provides the Secretary of Education (Secretary) with "wide-ranging authority to enforce the provisions of the [HEA]." (*Parks School, supra,* 51 F.3d at p. 1485.) The court posits that " '[i]n light of the extensive enforcement authority given to the Secretary under this program, this court is convinced that *Congress intended this mechanism to be the exclusive means for ensuring a lender's compliance with the statutes and regulations.* The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers. For example, there would be little chance of a lender later curing or correcting its violation or compromising with the Secretary, if the lender was already entangled in litigation on the same matter with an institution and particularly if any correction or compromise could possibly constitute an admission of fault in any other litigation.' " (*Ibid.*, italics added.)

Since the Secretary has sole authority over enforcement of the statutes and regulations governing the HEA generally (20 U.S.C. § 1082; *Parks School, supra,* 51 F.3d at p. 1484), the question becomes whether Davies's suit seeks to enforce compliance with the HEA and its regulations. Standards for granting deferments and forbearances are described in 34 C.F.R. §§ 682.210, 682.211 (2008), and not in Davies's promissory note.[2] By alleging misconduct for refusing to grant Davies a continued deference or

---

[2] In his reply brief, Davies alleges that Code of Federal Regulations provisions are inapplicable because "The loan is a 'Federal Stafford Loan', not a F[ederal] F[amily] E[ducation] L[oan] P[rogram] loan [*sic*]." The FFEL (Federal Family Education Loan) program is not a *type* of loan, but is instead a *program* offering various federal loans. The FFEL program implements a variety of federal loans: federal consolidation loans (20 U.S.C. § 1078-3), federal PLUS loans (20 U.S.C. § 1078-2), and Davies's federal Stafford loans. (See 20 U.S.C. ch. 28, subch. IV, pt. B, titled Federal Family Education Loan Program.) Davies's federal Stafford loans are loans implemented under and derived from the FFEL *program,*

forbearance of loan repayment, Davies seeks to litigate the issue of whether he should have been granted a forbearance or deferment. This he cannot do, since the Code of Federal Regulations governs forbearances or deferments, and enforcement of the same is left to the Secretary. The Code of Federal Regulations mandates regulations to implement the HEA that in turn determine respondents' forbearance and deferment policies. (34 C.F.R. §§ 682.210, 682.211 (2008).) Therefore, suit concerning application of that forbearance or deferment policy necessarily is one based "on the HEA." Enforcement of those regulations falls on the Secretary, and there is, therefore, no private right of action. (20 U.S.C. § 1082; *Parks School, supra*, 51 F.3d at p. 1484.)

Similarly, the promissory note itself is to be interpreted in accordance with the HEA. The Code of Federal Regulations contains language, as respondent noted, that tracks the language of the promissory note. "Default. The failure of a borrower and endorser, if any, or joint borrowers on a PLUS or Consolidation loan, to make an installment payment when due, or to meet other terms of the promissory note, the Act, or regulations as applicable, if the Secretary or guaranty agency finds it reasonable to conclude that the borrower and endorser, if any, no longer intend to honor the obligation to repay, provided that this failure persists for—[¶] (1) 270 days for a loan repayable in monthly installments; or [¶] (2) 330 days for a loan repayable in less frequent installments." (34 C.F.R. § 682.200 (2008).)

Davies's suit alleging breach of the promissory note is focused on the definition of default in the note, particularly language concerning whether respondents reasonably concluded that he did not intend to pay his student loan. However, those terms in the promissory note "will be interpreted in accordance with the [HEA]" under the "Governing Law and Notices" provisions of the note. Suit on default terms of the promissory note therefore requires litigation on the HEA as to the meaning of the default terms in the note.

█ Additionally, "default" defined by the Code of Federal Regulations refers to the "Secretary['s]" determination of whether the borrower reasonably intends "to honor the obligation to repay . . . ." (34 C.F.R. § 682.200 (2008).) Such reference to the Secretary serves as a reminder that " 'Congress intended [the Secretary] to be the *exclusive* means for ensuring a lender's compliance with the statutes and regulations.' " (*Parks School, supra*, 51 F.3d at p. 1485, italics added.) After reviewing the language of the promissory note and the HEA, it is clear that Davies's suit on the note is actually a suit on the HEA. Since there is no private right of action under the HEA, the trial court properly granted respondents' demurrers.

therefore, those sections of the Code of Federal Regulations applicable to the FFEL program are applicable to Davies's federal Stafford loans.

We note further that, although *Parks School* involved a suit by an education institution over acts relating to regulations pertaining to the continuation of offers of student loans, and the instant matter revolves around conduct by the lending bodies to enforce the repayment of student loans already made, the *Parks School* analysis is nonetheless on point. Particularly relevant is the court's statement that " 'Congress intended this mechanism to be the *exclusive* means for ensuring a lender's *compliance with the statutes and regulations.*' " (*Parks School, supra,* 51 F.3d at p. 1485, italics added.) Just as this statement applies to a private university's suit against its ex-student loan guarantor, it also applies to a student's complaint that his lender failed to administer deferments or forbearances in compliance with the applicable statutes and regulations.

In addition, in virtual unanimous fashion, when confronted with the issue other courts have determined there is no private right of action under the HEA. (See *Labickas v. Arkansas State University* (8th Cir. 1996) 78 F.3d 333, 334 ["We conclude that no private right of action is implied under the HEA for student borrowers. . . . [T]he statute and legislative history do not otherwise suggest congressional intent to create a private remedy. [Citations.]"]; *Parks School, supra,* 51 F.3d at p. 1485 [" 'The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers' "]; *L'ggrke v. Benkula* (10th Cir. 1992) 966 F.2d 1346, 1348, fn. 4 [finding no private cause of action and noting "A contrary result here has the potential to occasion a floodwater of federal actions by students perceiving themselves to be aggrieved . . . not to be risked absent some showing of supporting Congressional intent"]; see also *McCulloch v. PNC Bank Inc.* (11th Cir. 2002) 298 F.3d 1217, 1221 [collecting cases of the same result]; *Williams v. National School of Health Technology* (E.D.Pa. 1993) 836 F.Supp. 273, 279 ["Congress manifested its intention that the provisions [of the HEA] be enforced *administratively* by directing the Secretary to promulgate regulations to implement the amendments" (italics added)]; *George W. v. U.S. Dept. of Educ.* (E.D.Cal. 2000) 149 F.Supp.2d 1195, 1211 ["On balance, the foregoing factors disfavor a private right of action to enforce HEA regulations"]; but see *Fischer v. UNIPAC Service Corp.* (Iowa 1994) 519 N.W.2d 793, 796–799 [addressing the *merits* of student borrower's suit alleging denial of a deferment in violation of the HEA].)

Yet, Davies asserts that "[t]he within action clearly addresses claims and defenses to a private promissory note agreement between [a]ppellant and [r]espondents related to [r]espondents' forbearance policy." Davies avers that his suit is simply a breach of contract based on state law and not the HEA; this is incorrect. The text of the relevant areas of the promissory note, as reproduced above, provide no contractual rights to Davies regarding his

continued deferment or forbearance requests. This language only describes the circumstances under which respondents may place him in default.

Davies also alludes to some sort of implied agreement where respondents obligated themselves to continue granting deferments or forbearances ad infinitum. "[Respondents] breached their obligations of good faith and fair dealing, and their obligations and responsibilities created by the deferments granted to [Davies], by refusing to grant [Davies's]" final deferment request before respondents placed his promissory note in default. Davies points to no authority supporting his legal position that one grant of forbearance or deferment locks the lender into making repeated grants until some undetermined time in the future.

Davies's reliance on *United States v. Griffin* (D.C. Cir. 1983) 228 U.S. App.D.C. 72 [707 F.2d 1477, 1482] (*Griffin*) is also misplaced. *Griffin* decided whether a student loan recipient, who defaulted on a loan made by the school he attended, retained defenses to that loan, enforceable against his school lender, after the government purchased the loan and attempted to collect. (*Id.*, 707 F.2d at pp. 1478–1479.) The court found the student's defenses enforceable against the original lender, were also enforceable against the government even after the student's default and the government's purchase of the loan. The court found this policy would not lead to government losses on the loans because "the government can turn around and recover from the lender default claims paid on obligations not in fact owed." (*Id.* at p. 1482.) Davies contends this case stands for the proposition that "a student loan borrower may bring actions against a lender based upon a lender's forebearance policy . . . ." To the contrary, as explained above, *Griffin* is simply about a student borrower's retention of defenses after the government's purchase of a defaulted loan.

The SAC also requests equitable relief. On appeal, however, Davies makes no argument for such relief or claim of error associated with the court's dismissal of that claim. Davies merely summarizes the allegations of his SAC. Accordingly, Davies's appeal concerning the demurrers as to his equity causes of action is waived. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] ["Although our review of a [demurrer] is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned. [Citation.]"].) Since we reject Davies's substantive claims on the merits, the dismissal relating to his request for declaratory relief is likewise affirmed.

Lastly, Davies contends, without describing why, the trial court abused its discretion in sustaining the demurrers to his SAC without offering him

another chance to amend his pleading. It is of note that prior to sustaining the demurrer without leave to amend, the trial court offered Davies two previous opportunities to amend his pleading to state a cause of action. Since as a matter of law Davies cannot sustain a cause of action under the HEA, and Davies's briefs on appeal do not meet his burden on appeal by indicating how his complaint could be amended to avoid bringing suit on the HEA, we determine the trial court did not abuse discretion in granting the demurrers to Davies's SAC without leave to amend.

## III.  DISPOSITION

The orders sustaining respondents' demurrers to Davies's SAC without leave to amend are affirmed. Each party to bear his or its own costs on appeal.

Sepulveda, J., and Rivera, J., concurred.