Filed 1/23/14  Sarno v. Wells Fargo Bank CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN C. SARNO, | B246952 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC485889) |
| v. | |
| WELLS FARGO BANK N.A., | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Affirmed.

Law Offices of Barry K. Rothman and Fredric R. Brandfon for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Jon D. Ives and Kerry W. Franich for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff John C. Sarno (Plaintiff) appeals from the judgment entered in favor of Defendant Wells Fargo Bank, N.A. (Wells Fargo) after the trial court sustained Wells Fargo's demurrer without leave to amend. We affirm.

In November 2010, Wells Fargo provided Plaintiff a Good Faith Estimate (GFE) for a home loan. The GFE quoted an initial interest rate of 4.25 percent. Closing was to occur at the end of November, but it was postponed for two months. Immediately prior to the closing, Wells Fargo allegedly informed Plaintiff that the interest rate had increased to 4.625 percent. Plaintiff accepted the new interest rate and proceeded with the closing.

Over a year later, Plaintiff sued Wells Fargo, claiming the GFE constituted a binding agreement to make a loan at the listed 4.25 percent interest rate and that, under the GFE's terms, the quoted interest rate was "available indefinitely." The trial court rejected this contention, as do we.

The federal regulations governing GFEs expressly provide, "[i]f the interest rate has not been locked, . . . loan terms related to the interest rate may change." (24 C.F.R. § 3500.7(f)(5).) Plaintiff admits he did not lock the 4.25 percent interest rate quoted in the GFE. And, contrary to Plaintiff's contention, the GFE cannot reasonably be interpreted as a binding agreement to make a loan at the quoted interest rate for an indefinite period of time. The judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal is from a judgment following the sustaining of a demurrer without leave to amend, we recite the material facts pled in the complaint without passing on the truth of the allegations, but disregard contentions, deductions and legal conclusions. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

In the fall of 2010, Plaintiff applied for a loan from Wells Fargo to purchase real property located in Santa Fe Springs, California. On November 9, 2010, Wells Fargo provided Plaintiff a GFE, which set forth a summary of the anticipated loan terms and

estimated settlement costs.  The GFE included an initial interest rate quote of 4.25 percent.

In the section entitled "Important dates," the GFE provided:

"1.     The interest rate for this GFE is available through $\boxed{\text{N/A}}$. After this time, the interest rate, some of your loan Origination Charges, and the monthly payment shown below can change until you lock your interest rate.

"2.     This estimate for all other settlement charges is available through $\boxed{11/22/2010}$.

"3.     After you lock your interest rate, you must go to settlement within $\boxed{\text{N/A}}$ days (your rate lock period) to receive the locked interest rate.

"4.     You must lock the interest rate at least $\boxed{10}$ days before settlement."

Plaintiff opened escrow, which was originally scheduled to close on November 30, 2010.  However, the close of escrow was postponed to January 24, 2011.

Immediately prior to the January 24, 2011 close of escrow, Plaintiff alleges Wells Fargo informed him the interest rate on his loan had been increased to 4.625 percent. Wells Fargo did not consult Plaintiff before raising the interest rate.  Plaintiff, nevertheless, accepted the increased interest rate and proceeded with the close of escrow. After closing, Plaintiff unsuccessfully attempted to negotiate with Wells Fargo to reduce the interest rate to 4.25 percent.

On June 4, 2012, Plaintiff filed a complaint against Wells Fargo, asserting seven causes of action for (1) fraud; (2) negligent misrepresentation; (3) intentional interference with prospective economic advantage; (4) violation of Business and Professions Code section 17200; (5) violation of Civil Code section 1750; (6) breach of contract; and (7) breach of the implied covenant of good faith and fair dealing.  Each cause of action was premised on the legal theory that the GFE constituted a binding agreement to make a loan at an interest rate of 4.25 percent and that, under the terms of the GFE, the 4.25 percent interest rate was "available indefinitely."

3

Wells Fargo demurred to the complaint, asserting, among other things, that the complaint failed to allege sufficient facts to state a claim because the GFE did not, as a matter of law, constitute a binding agreement to make a 4.25 percent interest rate loan for an indefinite period of time. In his opposition to the demurrer, Plaintiff withdrew his claims for intentional interference with prospective economic advantage and violation of Civil Code section 1750.

The trial court sustained the demurrer to the remaining causes of action without leave to amend. On January 29, 2013, the court entered judgment dismissing the action.

## STANDARD OF REVIEW AND CONTENTIONS

"We apply the de novo standard to review an order sustaining a demurrer. [Citation.] Since the trial court sustained the demurrer without leave to amend, we must determine 'whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.' [Citation.] It is plaintiff's burden to establish that the complaint could be amended to cure any pleading defect. [Citation.]" (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1008 (*Barroso*).)

Plaintiff challenges the judgment on two grounds. First, Plaintiff contends a GFE is a binding agreement between a loan originator and a borrower, the terms of which can be amended only by issuing the borrower a revised GFE. Second, Plaintiff contends the 4.25 percent interest rate was, under the terms of the GFE provided by Wells Fargo, available for an indefinite period of time. We disagree on both counts.

As we shall explain, although a loan originator is generally bound by the terms listed in a GFE pertaining to loan settlement service charges, the governing federal regulations make clear that with respect to the listed interest rate, the lender is bound only during the period specified in the GFE or while the interest rate is locked. (24 C.F.R. § 3500.7(c), (e)(1)(ii) & (f)(5).) Plaintiff admits that he did not lock the 4.25 percent interest rate. As for Plaintiff's contention that the 4.25 percent interest rate was available for an indefinite period of time, we hold that the terms of the GFE are not reasonably susceptible of this interpretation.

4

1.      *The Interest Rate Listed on a GFE Is Binding Against the Loan Originator*
        *Only During the Period Specified or While the Interest Rate Is Locked*

The Real Estate Settlement Procedures Act (RESPA) requires mortgage lenders to disclose the costs associated with real estate closings.  (12 U.S.C. § 2601.)  The statute aims to ensure that loan applicants are "provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges . . . ."  (*Ibid.*)  To advance this purpose, RESPA requires lenders to provide "a good faith estimate [GFE] of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with settlement . . . ."  (12 U.S.C. § 2604(c).)

Effective January 16, 2009, the Department of Housing and Urban Development (HUD) revised its regulations governing GFE's (24 C.F.R. § 3500.7) and adopted a new GFE form that requires lenders to disclose certain loan terms, including the initial interest rate, along with the various settlement charges that RESPA seeks to regulate. (73 Fed.Reg. 68204, 68213-68216 (Nov. 17, 2008).)  In adopting this requirement, HUD determined that "consumer understanding of mortgage loans and of their settlement costs will be greatly enhanced by requiring disclosure of certain loan terms in a clear, user-friendly format on the GFE."  (*Id.* at p. 68214.)  In HUD's view, the disclosure of key loan terms "furthers RESPA's purpose to 'provide more effective advance disclosure to homebuyers and sellers of settlement costs' " since "disclosure of [certain] settlement costs [would be] meaningless (and therefore ineffective), absent the context provided by simultaneous disclosure of some loan terms."  (*Id.* at p. 68215.)

Given RESPA's focus on settlement charges, it is not surprising that the interest rate receives different treatment in HUD's governing regulations.  Under HUD's regulations, "the estimate of the charges and terms for all settlement services must be available for at least 10 business days from when the GFE is provided . . . ."  (24 C.F.R. § 3500.7(c).)  However, the estimates for "the interest rate [and] charges and terms dependent upon the interest rate" are "excepted from this requirement[.]"  (*Ibid.*)  In its

5

comments concerning the "Period During Which the GFE Terms Are Available to the Borrower," HUD stated it was "not requiring the interest rate to be available for any specific length of time"; rather, the "the interest rate stated on the GFE [would] be available until a date set by the loan originator for the loan."[1] (73 Fed.Reg., *supra,* at p. 68216.) "After that [date], the interest rate [and] the interest rate related charges . . . could change until the interest rate is locked." (*Ibid.*)

Consistent with this exception from the 10 business days requirement, HUD's regulations create additional carve-outs for the interest rate listed on the GFE. Indeed, this is true of paragraph (f), which Plaintiff relies upon as the lynchpin for his argument that Wells Fargo could not change the interest rate without issuing a revised GFE. Paragraph (f) provides: "The loan originator is bound, within the tolerances provided in paragraph (e) of this section, to the settlement charges and terms listed on the GFE provided to the borrower, unless a revised GFE is provided prior to settlement consistent with this paragraph (f) . . . ." (24 C.F.R. § 3500.7(f).) The carve-out for "the tolerances provided in paragraph (e)" is notable, because paragraph (e) specifically addresses charges related to the quoted interest rate. With respect to those charges, paragraph (e) expressly states that those charges are binding only "[w]hile the borrower's interest rate is locked." (24 C.F.R. § 3500.7(e) ["the actual charges at settlement may not exceed the amounts included on the GFE for [¶] . . . [¶] (ii) *While the borrower's interest rate is locked*, the credit or charge for the interest rate chosen; [¶] (iii) *While the borrower's interest rate is locked*, the adjusted origination charge . . . ."], italics added.)

---

[1] HUD's decision not to require the interest rate to be available for any specific length of time is consistent with comments received from some lending industry representatives on the proposed rule. For example, the Mortgage Bankers Association suggested the final rule "should make clear that the interest rate on the GFE may be available until a specified hour and date, since interest rates frequently change several times a day." (73 Fed.Reg., *supra,* at p. 68216.)

Likewise, paragraph (f)(5) provides that "[i]f the interest rate has not been locked, or a locked interest rate has expired, the charge or credit for the interest rate chosen, the adjusted origination charges, per diem interest, and loan terms related to the interest rate may change." (24 C.F.R. § 3500.7(f)(5).) As HUD explained, this exemption for interest rate-related charges necessarily extends to the quoted interest rate itself: "The final rule also clarifies that, where a borrower has not locked a particular interest rate . . . all interest rate-dependent charges on the GFE are subject to change. . . . *Of course, the various specific places where the interest rate is identified on the GFE would also be subject to change if the interest rate is not locked.*" (73 Fed.Reg.*, supra,* at p. 68221, italics added.) Further, it is only "[w]hen the interest rate is later *locked*, [that] a revised GFE must be provided showing the revised interest rate-dependent charges and terms." (24 C.F.R. § 3500.7(f)(5), italics added; see also 73 Fed.Reg.*, supra,* at p. 68221 ["If the borrower later locks the interest rate, a revised GFE should be provided at that time to show the revised information."].)

" 'Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies. [Citation.]' [Citation.] Courts do not examine statutory language 'in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' [Citation.] We are required to construe a provision 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness' [citation] and to avoid an interpretation that renders language a nullity [citation].' " (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1336.) " 'While the interpretation of a statute is ultimately a question of law, appellate courts will defer to an administrative agency's interpretation of a statute or regulation involving its area of expertise, unless the interpretation flies in the face of the clear language and purpose of the interpreted provision.' " (*Estrada v. City of Los Angeles* (2013) 218 Cal.App.4th 143, 148-149.)

7

Plaintiff's contention that a lender must provide a revised GFE before it may settle a loan at a different interest rate is not consistent with RESPA's statutory purpose or the regulatory framework governing GFEs. HUD's regulations and the agency's interpretation of those regulations make clear that the initial interest rate is disclosed in the GFE to give context to the settlement charges that are RESPA's primary focus. Thus, while most of the settlement charges are binding against the lender for a minimum of 10 business days after the GFE is issued, the regulations expressly exempt the interest rate from this requirement. The interest rate is binding against the lender only during the period of time specified in the GFE. (See 24 C.F.R. § 3500.7(c), (e)(ii) & (e)(iii).)

The obligation to provide a revised GFE also has a carve-out for the interest rate. Unlike other settlement charges, with respect to the interest rate, the regulations contemplate that a revised GFE will be provided only "[w]hen the interest rate is later *locked . . . .*" (24 C.F.R. § 3500.7(f)(5), italics added.) Focusing on paragraph (f) in isolation, as Plaintiff urges, would ignore the various carve-outs and express exemptions provided for the interest rate in the regulations governing GFEs.[2]

Congress intended RESPA and the GFE to protect prospective borrowers from exorbitant settlement charges by facilitating shopping among lenders. (73 Fed.Reg.*, supra,* at p. 68216 ["[a] central purpose of RESPA regulatory reform is to facilitate shopping in order to lower settlement costs"].) Neither RESPA nor HUD's regulations manifest a legislative intent to establish the GFE as a substitute for an interest rate lock agreement. On the contrary, HUD's regulations and its interpretive commentary suggest just the opposite.

---

[2]    Nor is this to discount the significance of paragraph (g), which expressly states that a "GFE is not a loan commitment" and "[n]othing in this section shall be interpreted to require a loan originator to make a loan to a particular borrower." (24 C.F.R. § 3500.7(g), italics omitted.) Thus, while the lender is bound by the quoted settlement charges (and the quoted interest rate during the period specified in the GFE), the lender is nevertheless free, at least with respect to its obligations under the GFE, to decide not to make the loan.

Here, Plaintiff admits he never locked an interest rate. He nevertheless contends he had no reason to "concern himself with a future change in [interest] rate, because the date on which those future changes would begin to occur was not specified" in the GFE. Consequently, Plaintiff avers, he "never thought that his rate was subject to change." We now consider whether the subject GFE is reasonably susceptible of Plaintiff's proffered interpretation.

2. *The GFE Is Not Reasonably Susceptible of the Interpretation that the Listed Interest Rate Would Be Available for an Indefinite Period of Time*

Plaintiff contends that, under the terms of his GFE, Wells Fargo was bound by the listed 4.25 percent interest rate indefinitely, if it ever decided to make the loan. Plaintiff premises his contention on the following clause from the "Important dates" section of the subject GFE: "The interest rate for this GFE is available through N/A . After this time, the interest rate, some of your loan Origination Charges, and the monthly payment shown below can change until you lock your interest rate." Plaintiff contends that, "[b]y not providing a date after which the interest rate may change, [Wells Fargo] was informing [Plaintiff] that there was no such date," and the interest rate could not be changed.[3] We disagree.

" 'Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach.' [Citation.] Moreover, '[t]he rule on

---

[3] Plaintiff places a caveat on this proffered interpretation. Plaintiff says his interpretation, coupled with his "understanding of the regulations[,] do not require a rate lock in perpetuity." Rather, Plaintiff argues, Wells Fargo could still make "the loan at a higher interest rate so long as it offers a new GFE and explains the higher rate." As we discussed in the preceding section, insofar as the interest rate is concerned, HUD's governing regulations require a revised GFE only "[w]hen the interest rate is later locked . . . ." (24 C.F.R. § 3500.7(f)(5).) As Plaintiff admits he did not lock an interest rate, Wells Fargo had no obligation to provide a revised GFE.

demurrer is simply a variation on the well-recognized theme that "[i]t is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." [Citations.]' [Citation.]" (*Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1091.)

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) " ' "The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable." ' " (*Barroso, supra,* 208 Cal.App.4th at p. 1013.)

The clause providing that "[t]he interest rate for this GFE is available through N/A " cannot be reasonably interpreted to bind Wells Fargo to the quoted 4.25 percent interest rate indefinitely. Such an interpretation would make an extraordinary contract, and one with potentially harsh and inequitable consequences for both parties. This case demonstrates the point. After a two-month postponement of the closing, Wells Fargo was willing to make the loan only at an interest rate of 4.625 percent. As Plaintiff acknowledges, and paragraph (g) of HUD's governing regulations provides, "[a] GFE is not a loan commitment" and nothing in the GFE is to be interpreted to "require a loan originator to make a loan to a particular borrower." (24 C.F.R. § 3500.7(g), italics omitted.) Thus, if Plaintiff's interpretation of the clause were correct, Wells Fargo would be left with only two options: (1) make the loan to Plaintiff on terms that are not supported by prevailing market rates, or (2) refuse to make the loan—leaving Plaintiff without means to purchase the desired real property.[4] That cannot be what the parties intended.

---

[4] This would not be the case if Plaintiff had entered an agreement with Wells Fargo locking the interest rate. Had such an agreement been entered, Plaintiff would have received an enforceable commitment from Wells Fargo to make the loan at the specified interest rate during the rate lock period and Wells Fargo would have received a fee from Plaintiff to compensate for potential swings in market rates of interest during this period.

If "N/A" in the subject clause does not mean that the interest rate would be available indefinitely, then it can only mean that the rate was not guaranteed for any amount of time. Such an interpretation comports with common usage of the abbreviation "N/A," which "can mean 'not available' as well as 'not applicable.' " (*In re C.B.* (2010) 190 Cal.App.4th 102, 146; see also Evid. Code, § 451, subd. (e).) The interpretation also is consistent with the governing HUD regulations, which make clear that there is no minimum period of time for which the lender must make the interest rate listed in a GFE available to a prospective borrower. (24 C.F.R. § 3500.7(c); see also 73 Fed.Reg., *supra,* at p. 68216.) And, this interpretation is bolstered by the GFE's definite statement that the "estimate for all other settlement charges is available through 11/22/2010"—10 business days after the November 9, 2010 date of the GFE, as required by the governing regulations. (24 C.F.R. § 3500.7(c).)

Because the 4.25 percent interest rate listed in the subject GFE was not binding upon Wells Fargo for any period of time, each of Plaintiff's causes of action fails as a matter of law. The demurrer was properly sustained without leave to amend.

**DISPOSITION**

The judgment is affirmed.  Defendant is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

12