Filed 6/23/15  Adelman v. Adelman CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| RONALD ADELMAN,<br><br>    Plaintiff, Cross-defendant and<br>Respondent,<br><br>v.<br><br>JEROME ADELMAN,<br><br>    Defendant, Cross-complainant and<br>Appellant. | B251644<br><br>(Los Angeles County<br>Super. Ct. No. LC097376) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Reversed and remanded.

Anaya Law Group, Alana B. Anaya and Jonathan A. Malek for Defendant, Cross-complainant, and Appellant.

Law Offices of Alessi & Koenig, Thomas Bayard and Ryan Kerbow, for Plaintiff, Cross-defendant, and Respondent.

_____

Jerome Adelman appeals from a money judgment in favor of respondent Ronald Adelman, his son. Appellant argues that the parties were partners in a restaurant business, and that he is entitled to set off half of the partnership liabilities against respondent's damage award. We agree that the parties formed a partnership, reverse the judgment, and remand the case to the trial court to consider the parties' respective rights and liabilities as partners.

**FACTUAL AND PROCEDURAL SUMMARY**

Respondent located the restaurant, Maui Grill Chicken, and bought it in February 2010 in the name of his business entity, Scoop Enterprises, LLC. He negotiated the restaurant purchase and the building lease. Both parties personally guaranteed the lease. Appellant funded the purchase of the business and all equipment.

On February 16, 2010, the parties entered into an agreement, drafted by appellant, which provided that appellant's "initial ownership" in the restaurant would be 51 percent, while respondent's would be 49 percent. The agreement provided further:

"1. Ron Adelman is to purchase his 49% interest by managing the Restaurant based on an annual Salary of $50,000.

"2. The cost of purchasing the Business is the purchase price of $52,500.00 plus additional equipment of approximately $5,000.00 and Escrow Expenses of $1,000.00.

"3. Once Ron Adelman has worked off the One-half of the purchase price of the business then his . . . percentage shall become 50%.

"4. Ron Adelman is to be the managing partner, which includes the daily oversight of inventory, employees & general management of the restaurant, and his compensation shall [be] $50,000.00 annually and said compensation shall commence once he has paid for his 50% interest. Ron Adelman is to receive an additional 10% of the net profit for being the managing partner.

"5. Ron Adelman's management position and salary of $50,000.00 are to run for a period of two (2) years, however should said position or salary be changed then he is

2

entitled to a severance payment of $50,000.00 and the value of his ownership interest in the business.

"6. Either Partner shall be able to buy out the interest of the other Partner based upon either their own evaluation of the value of the business or by the use of the Business Broker chosen by both partners. The cost of the buy out shall be paid within two (2) years after the Purchase plus interest at a rate to be agreed upon between the Partners, at the time of the buy out.

"7. It is further agreed that NO family member may [be] employed in the business without the agreement of both Partners.

"8. No profits are to be drawn by either partner until the initial investment of the Partners has been paid in full and $50,000.00 is in the Restaurant Account.

"9. The initial first month's rent is to be paid to Jerome Adelman within 90 days from the date hereof and is to come from the receipts of the business and further that all purchases made after payment of the purchase price of the business is to come from the cash flow of the business."

Appellant wanted respondent to earn his partnership interest by managing the restaurant because he had failed to complete previous business projects. Respondent was responsible for the restaurant's day-to-day operations. He opened its bank accounts and made all cash deposits. He hired all employees. He set up payroll, holding himself out as the business's president. He registered the business with the Employment Development Department representing appellant as having 100 percent ownership, but listing himself as a partner. Appellant represented himself to respondent and to the Internal Revenue Service as the sole owner of the restaurant. Respondent was issued a W-2 wage and tax statement for 2011, showing he was paid $26,385.[1]

Despite the provision in the parties' agreement that rent and purchases would be covered by the cash flow of the restaurant, appellant paid the restaurant's rent and

---

[1] The settled statement, apparently in error, reflects that appellant authorized payroll to pay him $28,385.

financed purchases of supplies and equipment. He advanced in total $95,187.27. Respondent used appellant's credit card for purchases in 2011 and 2012. He sold some equipment and kept the proceeds because he believed appellant owed him money. The business was never profitable, and it closed in less than two years. When appellant stopped paying rent, the landlord filed an eviction action. In 2012, the Board of Equalization charged appellant $7,172.39 for sales tax appellant had failed to pay.

In an e-mail he sent in April 2011, appellant chastised respondent for counting his work hours and threatening to quit, and contrasted his situation with that of "manager[s] in the food business . . . [who] don't ever have a chance of owning anything." In January 2012, appellant notified respondent that he would receive an accounting of appellant's investment and other loans to the business, respondent's "partnership obligation," and "what you have left from your mgr contract."

In May 2012, respondent sued appellant for breach of contract and quantum meruit, seeking $138,000 in damages. Respondent alleged appellant failed to pay him any compensation under the original agreement, as well as under a subsequent oral agreement that increased respondent's compensation by $38,000 a year. Respondent also alleged appellant failed to "execute any documentation regarding the transfer of ownership interest in the restaurant" to respondent. Appellant cross-complained for breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing; he sought dissolution of partnership and accounting. The cross-complaint alleged that respondent breached the partnership agreement and his duties as a managing partner.

The court issued a statement of decision after a bench trial. It found the parties' agreement ambiguous, and adopted respondent's interpretation that respondent was hired as a manager with a salary of $50,000, which was to be applied towards the purchase of respondent's interest in the business after the conclusion of the two-year management period. The court found the interpretation was supported by appellant's treatment of the business as his own for federal tax income purposes and by a note on a copy of the agreement delivered to respondent in April 2011, which stated, "'Jerry is 100% owner of

4

the LLC for 2010 since the requirements above were not met by Ron.' [Exhibit 18]." The court concluded respondent worked "diligently and consistently," but because the business failed in less than two years, he did not work long enough to purchase his 49 percent ownership in the business.

The court rejected respondent's contention that he was entitled to $100,000 in compensation because respondent was to pay that amount in labor for "the opportunity to [try to] become a partner." It acknowledged the agreement did not provide clearly what would happen if the business failed, but nevertheless concluded the severance provision was triggered by the business's failure because respondent's pay was effectively reduced from $50,000 a year to $0. Respondent was awarded $50,000 in severance pay, plus $11,615—the difference between the $38,000 in additional pay he had been orally promised and the $26,385 he received. Because the court concluded respondent was not a partner, the court ruled against appellant on the cross-complaint.

Appellant's motion for new trial was denied, and judgment for respondent was entered in the amount of $61, 615. This appeal followed.

## DISCUSSION

### I

"[T]he association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." (Corp. Code, §16202, subd. (a).) The existence of a partnership is an issue of fact to be determined from the parties' agreement, conduct, and the surrounding circumstances. (*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1157; *Holmes v. Lerner* (1999) 74 Cal.App.4th 442, 454.) A partnership agreement is subject to the general rules of contract interpretation. (*Scudder v. Perce* (1911) 159 Cal. 429, 432.) The determination whether a partnership was formed is reviewed for substantial evidence— evidence that is relevant and adequate to support that determination. (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 225; *Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 364.)

Appellant urges us to find that the inclusion of contractual language in the complaint constitutes a judicial admission that respondent was a partner.  We decline to do so.  The doctrine of judicial admissions applies to unequivocal statements of fact, but not to "[l]egal conclusions and assertions involving a mixed question of law and fact." (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 384; *Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324.)  Where a written contract is incorporated in a pleading, its meaning is an issue of law for the court to decide.  (*Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1091.)  An ambiguous contract may require consideration of extrinsic evidence.  (*Cedars–Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 980.)  As we explain below, the existence of a partnership does not depend solely on the parties' written agreement; nor is that agreement unambiguous.  As the trial court noted, the agreement is silent about compliance and default, and the parties advanced two very different theories of its meaning:  that respondent became a partner with 49 percent interest at inception, subject to revocation, or that he was not intended to become a partner until he bought his 49 percent interest by working as a manager for two years.  The incorporation of the terms of an ambiguous contract into the complaint is not a judicial admission.

The trial court adopted respondent's interpretation that the parties did not form a partnership because appellant required respondent to work for free for two years in order to buy his 49 percent interest.  That interpretation is flawed.

Under the general rules of construction, "'[c]ourts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless.'  [Citation.]" (*Hemphill v. Wright Family, LLC* (2015) 234 Cal.App.4th 911, 915.)  The parties' agreement provides for an initial 49/51 percent split in ownership and requires respondent to purchase his 49 percent by managing the restaurant for two years at a salary of $50,000.  Under the terms of the severance provision, which applies during those first two years, respondent is entitled to "the value of his ownership interest in the business," in addition to the severance payment of $50,000.  The court's conclusion that respondent

6

did not have an ownership interest during the first two years renders the clause regarding the value of his interest meaningless:  had it been intended that respondent would have no ownership interest during that period, there would have been no reason to provide for a valuation of his interest.

Even assuming the parties intended that a partnership arise only after a buy-in period, that intent is not determinative of the nature of their actual relationship, which the court failed to consider.  The existence of a partnership must be determined from "the nature of the relation agreed upon rather than the name which the parties have given to it."  (*Constans v. Ross* (1951) 106 Cal.App.2d 381, 386.)  If the essential elements of a partnership are established, the parties may not deny its existence.  (See e.g. *California Employment Stabilization Commission v. Walters* (1944) 64 Cal.App.2d 554, 558 ["It is the intent to do the things which constitute a partnership that usually determines whether or not that relationship exists between the parties"].)

The general elements of a joint venture or a partnership are "(1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control."  (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 819.)  A community of interest exists between partners when they associate to carry on a business.  (*Dills v. Delira Corp.* (1956) 145 Cal.App.2d 124, 131).  That community of interest empowers each partner to make contracts, incur liabilities, and manage or control the business.  (*Smith v. Grove* (1941) 47 Cal.App.2d 456, 462.)  Partners may contribute labor or capital, and one partner may relinquish control of the business to the other.  (*Mercado v. Hoefler* (1961) 190 Cal.App.2d 12, 16–17; *Dills v. Delira Corp.*, *supra*, at p. 132.)  Unless they agree otherwise, partners typically are not compensated for their services, on the theory that their contributions offset each other.  (*Vangel v. Vangel* (1953) 116 Cal.App.2d 615, 631.)  Partners also typically agree to share profits and losses, but no actual sharing of profits is required in the case of a new business that has no profits.  (*Holmes v. Lerner*, *supra*, 74 Cal.App.4th at p. 455.)

The parties' relationship in this case, from its inception, exhibited all essential elements of a partnership.  Respondent came up with the idea to buy the restaurant,

7

negotiated the purchase and lease, bought it in the name of his business entity and signed the lease, which both parties guaranteed. Thus, both parties signed contracts and incurred liabilities. Each party contributed either capital or labor. Appellant financed the business throughout its existence; respondent managed it. As the trial court found, respondent was not entitled to draw salary until he worked off his 49 percent interest in the business during the first two years. He was then expected to work off half of the purchase price to reach his 50 percent interest. The expectation that respondent would provide his services for free to offset appellant's contribution of capital is consistent with, rather than contrary to, a partnership arrangement.

The parties agreed to draw profits only after their initial investment had been paid off and the business had become profitable. Their intention to share losses may be inferred from the provision to share profits, with the caveat that where one party provides labor and the other capital, "neither party is required to reimburse the other for losses sustained. In the event of loss, the party contributing capital loses his capital and the one contributing labor loses the value of his efforts. [Citations.]" (*April Enterprises, Inc. v. KTTV*, *supra*, 147 Cal.App.3d 805, 819–820.)

The court erred in relying on appellant's representation of the business as his own. The note denying the existence of a partnership in 2011 is not in the record on appeal, but a subsequent e-mail indicates appellant did consider respondent a partner in 2012. Regardless, neither appellant's subjective views of the relationship, nor his tax decisions are determinative of the existence of a partnership. (See Corp. Code, § 16202, subd. (a) [subjective intent to form partnership not a necessary element]; cf. *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1289–1293 [husband's dba filing for income tax purposes designating wife as general partner did not create partnership where wife was unaware of designation and husband carried business on his own].) The court's conclusion that no partnership was formed is contrary to the law and evidence.

II

Appellant argues that respondent is precluded from recovering any damages under the parties' agreement because he breached it whether or not it was a partnership

8

agreement. In the alternative, he urges us to offset his losses against respondent's award. We decline to consider these arguments on the limited record before us.

Because appellant proceeds on less than a complete settled statement, he must "state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise." (Cal. Rules of Court, rule 8.137(b)(2).) "Stating the points to be raised on appeal enables the respondent to determine whether additional portions of the oral proceedings should be included in the settled statement. [Citation.] Failure to include issues in the settled statement precludes the appellant from raising them on appeal. [Citation.]" (*Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 534.)

The settled statement lists five issues. In the first two, appellant argues specifically for the applicability of the doctrine of judicial admissions and challenges the court's finding that respondent was not a partner in the restaurant. Appellant then asks whether the court erred in finding for respondent on the complaint and cross-complaint. The latter questions are so broad that in their totality they cover the entire trial without giving respondent any notice regarding the specific issues appellant intends to raise on appeal. Such an approach is inconsistent with the use of a limited settled statement. It also is unclear from the record whether appellant's theory at trial was that respondent materially breached the parties' agreement regardless of whether it was a partnership agreement.[2]

---

[2] Were we to consider appellant's claim that respondent is completely precluded from recovering damages, we would have to deny it. Appellant has not challenged, and we do not reach, the court's application of the severance provision in this case. The limited record before us shows respondent managed the restaurant until it closed, but there is no evidence that he brought on its failure. Thus, it cannot be said that he materially or totally breached the parties' agreement, so as to completely excuse appellant's performance. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 852, p. 938 [any breach that causes measurable injury gives injured party right to damages, but only material breach is ground for termination by injured party].) The statement of decision also indicates that damages were awarded in part under a separate oral contract, evidence of which does not appear in the record on appeal, and which appellant does not appear to challenge.

Because the court concluded respondent was not a partner, it apparently did not consider the merits of appellant's cross-complaint, which was based on the existence of a partnership and included claims of breach of contract, breach of fiduciary duty and fair dealing, as well as requests for dissolution and accounting. The proper remedy is to remand the case to the trial court to rule on the merits of the cross-complaint in light of our conclusion that a partnership existed.

III

Appellant moved this Court to enforce a global settlement agreement entered into the minutes in another case (*Adelman v. Adelman* [Super. Ct. L.A. County, No. BC522214]) and purporting to resolve both cases, or in the alternative to stay this appeal to allow its enforcement. The motion was denied and respondent moved for sanctions against appellant's counsel. After considering appellant's opposition to the motion for sanctions, we decline to impose sanctions, and we discharge the order to show cause.

Respondent represents appellant's motion was an improper attack on the trial court's ruling in case No. BC522214 that the settlement agreement was unenforceable. Appellant, however, claims that ruling pertained to the enforceability of a subsequent written agreement, not the agreement entered into the minutes. On the limited exhibits before us, we cannot determine the scope of the trial court's ruling, nor can we evaluate the reasons for the parties' various tactical decisions in case No. BC522214. A settlement agreement entered into the minutes may be enforced despite any dispute over the terms of a subsequent written agreement, and it may be enforced through various means, including under Code of Civil Procedure section 664.6[3] or in a separate lawsuit in equity. (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1431, 1432, fn. 2.) Section 664.6 is not the proper method to enforce a settlement agreement on appeal.

---

[3] Code of Civil Procedure section 664.6 (hereafter section 664.6) provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

(See, e.g., *Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267, 1271 [noting section 664.6 inapplicable on appeal]; *Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 544, quoting *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 [section 664.6 motion to enforce settlement agreement made in trial court].)  But on the record before us we cannot say that the request for a stay to enforce the agreement entered into the minutes was indisputably without merit or made for an improper motive. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this decision.  The parties are to bear their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

11