Filed 11/22/23  Lemke v. Mortgage Electronic Registration Systems CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| JOHN F. LEMKE, | C096706 |
| Plaintiff and Appellant, | (Super. Ct. No. 21CV45420) |
| v. | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. et al., | |
| Defendants and Respondents. | |

SUMMARY OF THE APPEAL

In 2006, plaintiff John F. Lemke (Lemke) borrowed $455,000 from defendant LoanCity, Inc. (LoanCity).  The loan was secured by a deed of trust on real property owned by Lemke.  By May 2011, the loan was in default, and in August 2012, the property was sold in a foreclosure sale to defendant US Bank National Association (US Bank), as trustee for Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7 (Credit Suisse), which held

1

the note in 2012.  US Bank sold the property to defendants Henry and Julie Martinez (Martinez) in 2013.

In 2013, after dismissing a federal action against some of the defendants, Lemke filed an action in the Superior Court for the County of Calaveras (Lemke 2) attempting to cancel various documents that were recorded between the 2006 loan and 2013 sale, regain possession, and secure title to the property.  The defendants in that action demurred to the complaint on numerous grounds.  The demurrer was sustained without leave to amend, and a judgment of dismissal was entered with prejudice.  Lemke appealed that judgment and lost.

Following the loss of his appeal, Lemke filed this action, again seeking to secure title in the property and cancel documents regarding the property that were recorded between 2006 and the 2013 sale.  All defendants to this action except LoanCity demurred, and the trial court sustained the demurrer on the grounds that statutes of limitations barred Lemke's causes of action and this third lawsuit is barred by principles of res judicata.  Lemke appeals.

We hold that Lemke's action is barred by the doctrine of res judicata.  Given our holding, we affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

The following facts are taken from allegations in Lemke's first amended complaint (complaint) or are judicially noticeable.  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42; Code Civ. Proc, § 430.30, subd. (a); see also Evid. Code, §§ 452, subds. (d) & (h), 459, subd. (a).)

Facts

In February 2006, Lemke acquired real property in Calaveras County from Lemke Construction, Inc.  The acquisition was memorialized by a grant deed dated February 10,

2

2006.  Also in February 2006, Lemke borrowed $455,000, from LoanCity.  The note on the loan called for payments to be made to LoanCity.

Repayment of the loan was secured by a deed of trust on the real property dated February 24, 2006.  Defendant Mortgage Electronic Registration Systems, Inc. (MERS) was identified as the nominee of the lender and lender's successors and as the beneficiary of the deed of trust.  The trustee was Sterling Title Company.

Lemke alleges that LoanCity falsely and deceptively presented itself as the lender, when actually (1) acting as a broker for an unlicensed lender, defendant DLJ Mortgage Capital, Inc. (DLJ Mortgage), to generate loans for securitization; and (2) using funds from DLJ Mortgage for the loan.  Lemke alleges neither LoanCity nor DLJ Mortgage disclosed the "true nature of the transaction" because he would not have agreed to the loan if he had known its true nature.  According to the complaint, at the time the complaint was filed, LoanCity was suspended under Revenue and Taxation Code, section 23302.

According to the complaint, MERS is a third-party private registry/database.  Lemke alleges an agreement between LoanCity and MERS stated that MERS had no interest in the debt or payments on the debt, and that MERS was not authorized to transfer the note or debt.

Lemke also alleges an agreement between LoanCity and MERS required MERS to deactivate the deed of trust from MERS's registration system if the underlying debt was sold, transferred, or assigned to an entity that did not have a separate agency agreement that authorized MERS to act on behalf of that entity.  According to the complaint, "[f]urther, an assignment was required to be filed in the public records showing MERS was no longer engaged with the [deed of trust]."

According to the complaint, the loan was transferred to DLJ Mortgage, though Lemke takes the position that there was no actual transfer because DLJ Mortgage was

3

always the "true lender." Then, on or before December 31, 2006, DLJ Mortgage sold the loan to Credit Suisse.

We note that according to the complaint, there is no formal record of the transfer between DLJ Mortgage Capital and Credit Suisse.

Lemke alleges MERS did not hold an agency agreement with Credit Suisse and, therefore, pursuant to the purported agreement between LoanCity and MERS, when the deed of trust was sold to Credit Suisse, the deed of trust would have been deactivated because MERS's role in the deed of trust would be terminated. Lemke also alleges MERS intentionally did not record an assignment showing its termination as nominee acting as beneficiary to make it appear as if it still had authority to assign or transfer the deed of trust, even though its authority had been terminated under the agreement.

By May 1, 2011, the loan fell into default.

In October 2011, MERS signed a corporate assignment deed of trust, transferring all beneficial interest in the February 24, 2006, deed of trust to US Bank. Lemke alleges LoanCity never instructed MERS to assign or transfer the deed of trust to any entity, particularly US Bank, and that at the time MERS made the transfer it no longer had any authority to act as an agent on the deed of trust. Lemke alleges US Bank knew MERS lacked authority to execute this assignment. Lemke also alleges US Bank has no evidence of assignment or transfer of the underlying debt. He also alleges the note on the debt has no indorsement transferring or assigning interest to US Bank. Lemke alleges US Bank knew or should have known it held no interest in the debt, note, or deed of trust, and that it had not purchased the debt, and did not notify Lemke that it had purchased the debt and become his creditor. Lemke alleges US Bank lacked authority to take any subsequent acts in relation to the deed of trust because, Lemke claims, it was not a party to the note or a party with any authority under the deed of trust. He also alleges he owed no money to US Bank.

4

On May 3, 2012, NDEx West, LLC (NDEx), acting as an agent for the beneficiary, recorded a notice of default and election to sell under the deed of trust. According to the notice, on May 1, 2012, Lemke was $36,886.15 in default.

In June 2012, Wells Fargo, as an agent for US Bank, executed a substitution of trustee, substituting NDEx for Sterling Title Company as the trustee under the deed of trust.

On August 1, 2012, NDEx recorded a notice of trustee's sale that stated the property would be sold at a public auction sale on August 27, 2012.

At a public auction on August 27, 2012, US Bank, as the highest bidder, purchased the property for $380,000 through a credit bid. A trustee's deed upon sale memorializing the sale was recorded on August 31, 2012.

US Bank later sold the property to Henry and Julie Martinez. A grant deed in which US Bank granted the property to Henry and Julie Martinez was recorded on April 12, 2013. Lemke alleges Henry and Julie Martinez knew about the conflict regarding the real property and his position that it had been wrongfully foreclosed.

Prior Actions

The instant action is Lemke's third against some of the defendants.

On September 28, 2012, Lemke filed an action (Lemke 1) in the U.S. District Court for the Eastern District of California naming Wells Fargo Bank; LoanCity; U.S. Bank as Trustee for First Boston Mortgage Securities Corp.; CSMC Mortgage Backed Pass-Through Certificates, Series 2006-7; MERS; America's Servicing Company; and NDEx West, LLC as defendants. Lemke filed a notice of voluntary dismissal of that action on January 31, 2013.

On March 13, 2013, Lemke filed Lemke 2. Lemke filed a first amended complaint in Lemke 2 on June 25, 2013 (Lemke 2 complaint). Lemke 2 complaint identified the following defendants: LoanCity; US Bank; MERS; Wells Fargo Bank;

5

NDEx; Henry and Julie Martinez; unknown defendants as Doe defendants, including "Doe Investors"; and "[d]efendants on behalf of an unnamed beneficiary, conducting business in the State of California, []ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY . . . ADVERSE TO PLAINTIFF'[S] TITLE, OR ANY CLOUD ON PLAINTIFF'[S] TITLE THERETO," whom he alleged to be suing according to Code of Civil Procedure, section 762.020, subdivision (a). (See also Code Civ. Proc., § 762.060, subd. (a).) The complaint alleged causes of action for (1) cancelation of written instrument; (2) wrongful foreclosure; (3) quasi-contract; (4) accounting; (5) slander of title; and (6) violation of Business and Professions Code section 17200, et seq.

In the operative complaint for Lemke 2, Lemke alleged LoanCity never actually funded the loan and, therefore, the alleged note and deed of trust did not "represent the true parties or terms of a financial transaction that took place." He alleged that LoanCity, at best, served as a " 'broker' " for Doe Investors. He claimed that while the Doe Investors were at that time unknown, he could eventually identify them with documents in Lemke 2 defendants' possession.

He claimed the deed of trust, assignment of deed of trust, notice of default, substitution of trustee, and trustee's deed upon sale all contained materially false information, were executed by parties without authority, and were void, preventing a valid sale of the real property. He claimed documents executed subsequent to the deed of trust were void both because they relied on what he alleged was a void deed of trust and the parties that executed those documents were without authority to do so even if the deed of trust had been valid.

In his statement of general allegations in the operative Lemke 2 complaint, Lemke outlined much of the history he outlines in the complaint in this action. However, in Lemke 2, he alleged the individual who signed the October 2011 assignment of deed of trust assigning MERS's beneficiary interest to US Bank lacked the authority to effectuate

6

that document, where in this action Lemke focuses on his allegation that MERS as an entity lacked authority to make transfers to US Bank due to the alleged agreement between LoanCity and MERS.  In Lemke 2, he made other allegations suggesting the various entities and signatories to the documents reflecting a substitution of trustee, notice of default, and notice of sale lacked capacity to sign the documents.  Among other allegations, Lemke 2 complaint claims "US Bank was not the beneficiary under the [deed of trust]."

Within the paragraphs dedicated to specific causes of action, Lemke 2 complaint alleged the deed of trust and associated note were void because they did not represent the true parties to the transaction, and that LoanCity was not the true lender.  He also alleged that as of March 20, 2007, MERS no longer maintained an agency relationship with LoanCity and could not act on LoanCity's behalf when LoanCity stopped doing business in March 2007.  He alleged MERS was not acting on behalf of LoanCity when it assigned intertest in the deed of trust to US Bank.  He alleged NDEx was never duly substituted or authorized under the deed of trust, rendering the notice of sale void.

The defendants in Lemke 2 filed a demurrer to Lemke 2 complaint.  The memorandum of points and authorities filed in support of the demurrer identified global and cause-of-action-specific arguments in support of sustaining the demurrer.  Globally, the defendants argued that Lemke lacked standing because there was no irregularity in the foreclosure, that securitization of a loan does not render it unenforceable, that Lemke was required to but failed to allege he made a valid and viable tender of payment of indebtedness before challenging the foreclosure, and that Lemke had failed to rebut the presumption that the foreclosure was conducted regularly and properly.  The demurrer also challenged Lemke 2 complaint as uncertain.

Lemke 2 trial court sustained the demurrer to Lemke 2 complaint without leave to amend, "for the reasons set forth in Defendants' demurrer and memorandum in support thereof."  The trial court added a note to the form order prepared by defense counsel

7

stating, "[t]he First Amended Complaint does not state facts sufficient to constitute a cause of action and is uncertain." The court then entered a judgment of dismissal with prejudice. Lemke filed a motion for reconsideration with leave to amend, with which he included a proposed amended complaint. In the proposed amended complaint he added causes of action for tortious interference with contract, fraud and deceit, and unjust enrichment.

Lemke appealed the trial court's order, making no argument that the court had erred in sustaining the demurrer, and only arguing that the trial court had erred in denying him leave to amend his complaint and in expunging the lis pendens filed while Lemke 2 was pending. This court affirmed Lemke 2 trial court judgment. Lemke filed his notice of appeal in Lemke 2 on June 2, 2015. We filed our decision on March 22, 2021. The remittitur was issued on May 27, 2021.

This Action

Date of Commencement and The Operative Complaint

Lemke filed this action on June 15, 2021. He filed the operative complaint on February 14, 2022.

The underlying theory of Lemke's complaint is that parties without right or authority to do so wrongfully foreclosed on his real property rights by recording a trustee's deed upon sale, then selling that interest to third parties who had constructive notice of Lemke's claim that the foreclosure was wrongful and that Lemke had an interest in title.

In the complaint, Lemke also claims that because he did not know who the true parties to the February 2006 loan were, he was deprived of working with the true creditor when he sought a forbearance or modification of the loan, while third parties with adverse interests sought to liquidate the loan for their own financial gain. He claims LoanCity had a legal duty to disclose the true source of its funds to him but did not.

8

In the complaint, Lemke acknowledges that each of the claims he has alleged has a statute of limitations of three to four years. He concedes that the "operative date" for calculating the statute of limitations is "October 13, 2012[,] when title to his property was improperly taken, and [Lemke] experienced a particularized, concrete injury as the result of Defendant's [*sic*] acts." But he alleged the statute of limitations was tolled while he litigated Lemke 2 and tried to overturn Lemke 2 judgment on appeal, thus bringing the date he filed this action within the statute of limitations.

In the complaint, Lemke alleged his claims in this action are not barred by res judicata due to the fact that defendants engaged in "fraudulent concealment of material facts and intentionally misrepresented ownership interest to wrongfully foreclose."

Lemke alleged nine causes of action.

The first cause of action is for intentional misrepresentation against MERS, DLJ Mortgage, US Bank, and LoanCity. The action against LoanCity is based on his allegations that LoanCity misrepresented itself as the lender on the note and deed of trust, when it was really acting as a broker for DLJ Mortgage. He alleges DLJ Mortgage relied on LoanCity to pretend to be the lender when LoanCity was not. With respect to MERS, LoanCity, and DLJ Mortgage, he alleges they all concealed from him that MERS's role with respect to the deed of trust terminated in December 2006, when MERS's authority to act on the deed of trust terminated pursuant to a purported agreement between MERS and LoanCity. He further alleges when MERS executed the corporate assignment deed of trust in October 2011, it was making a false claim of transferring an interest to US Bank because it lacked authority to make the transfer and, thus, no real transfer occurred. He alleges US Bank relied on these purportedly false statements in the corporate assignment deed of trust which ultimately led to the notice of default, substitution of trustee, and trustee sale to US Bank, and that US Bank knew or should have known it did not own the debt and was relying on a void assignment. He alleges that in allowing its agent to record a notice of default in May 2012 and in allowing a servicing agent to claim

9

authority to substitute the trustee on the deed of trust in June 2012, US Bank made false statements. He alleges US Bank falsely represented that he owed it money and that if it had not made this representation, he would not have lost his property.

The second cause of action is for fraudulent concealment, and is alleged against MERS, DLJ Mortgage, and LoanCity. This cause of action is based on Lemke's allegations that LoanCity was not the true lender and that DLJ Mortgage was the actual lender, that DLJ Mortgage knew LoanCity was suppressing this information on its behalf, and that MERS "knew" its role and authority under the deed of trust had terminated but it "suppressed and/or concealed" this information when executing the corporate assignment of the deed of trust.

The third cause of action is for wrongful foreclosure and is alleged against US Bank, Henry Martinez, and Julie Martinez. This cause of action is based on Lemke's allegations that he never owed any payment to US Bank because it was never properly the creditor, lender, or assignee of the lender. He claims the substitution of trustee was executed by a party without the legal right to substitute the trustee, that the notice of default was defective because US Bank had no beneficial interest and was not a party to the contract, and that—because it was not a true or legal beneficiary to the deed of trust— US Bank had no right to issue a credit bid on the property.

The fourth cause of action is for cancellation of instruments and is alleged against MERS, US Bank, and Henry and Julie Martinez. He alleges, based on the aforementioned purported facts, that statements contained in the assignment of the deed of trust are false, and the assignment is void. He claims that on this basis the assignment should be adjudged as void and cancelled, and that all documents flowing from this—the notice of default, the substitution of trustee, the notices of trustee sale, the trustee's deed upon sale, and any subsequent deeds of conveyance should be adjudged void and cancelled from the public record.

10

The fifth cause of action is for slander of title and is alleged against MERS, US Bank, and Henry and Julie Martinez. Based on the aforementioned allegations, and the fact that "LoanCity was suspended and prohibited from distribution any assets such that MERS could not take acts on behalf of LoanCity," Lemke alleges that the assignment of deed of trust and trust deed of sale contain false statements about the parties' rights and interests. He claims this is so because the trust deed of sale falsely alleges it had the right to make a credit bid when it was not the beneficiary entitled to the credit bid. He claims as a result the trust deed of sale is void. He claims US Bank then sold the property to Henry and Julie Martinez based on an invalid and illegal foreclosure.

The sixth cause of action is for violations of Business and Professions Code, section 17200, et seq., and it is alleged against MERS, DLJ Mortgage, US Bank, and LoanCity. Lemke alleges the afore alleged acts of the defendants constitute unfair business practices or acts as contemplated by the code. He alleges these acts are part of the business pattern and practices of the defendants.

The seventh cause of action is for quiet title and is alleged against MERS, US Bank, and Henry and Julie Martinez. This cause of action incorporates the aforementioned facts, and it reiterates Lemke's position that acts taken by the defendants, particularly MERS and US Bank, were done without right or authority. He seeks a declaration that title to the property is vested in him.

The eighth cause of action is for breach of fiduciary duty and is against LoanCity alone, who has not appeared in this action. He alleges that LoanCity acted as a broker in arranging the loan, and it breached its fiduciary duty when it represented itself as the lender when the funds came from DLJ Mortgage.

The ninth cause of action alleges elder abuse by LoanCity, MERS, and US Bank. In this cause of action, Lemke alleges that in 2005 he was an elder as defined by Welfare and Institutions Code section 15610.27 and that the alleged actions of the defendants constitute elder abuse.

11

Demurrers

All the named defendants, except LoanCity, demurrered to the causes of action alleged against them. (DLJ also demurred to the entire complaint on grounds of res judicata.)

The trial court sustained the demurrers without leave to amend, primarily on two grounds. First, the court determined this action was barred by principles of claim or issue preclusion. In reaching this conclusion, the trial court looked to decisions rendered in an unlawful detainer action US Bank had brought against defendant to secure the property, a successful defense motion to expunge Lemke's lis pendens in Lemke 2, and the result of the demurrer and subsequent appeal in Lemke 2. Second, the court concluded all eight causes of action alleged against the demurring defendants were barred by the statute of limitations. In so doing, the court rejected Lemke's argument that the statute of limitation had been tolled during the pendency of Lemke 2 appeal. The trial court also stated, "there is no basis in law or fact to find that [Lemke] can avoid preclusion after losing an appeal, and yet retain the benefit of tolling while awaiting that unfavorable decision to refile a duplicate lawsuit."

Orders sustaining the demurrer and judgments were entered in favor of the defendants.

Lemke filed a motion for a new trial, which the trial court denied. In the motion Lemke argued (1) the court misapprehended the importance of the purported private agreement between LoanCity and MERS; (2) that it erred in considering the expungement of the lis pendens in Lemke 2 when it determined that the claims raised in this action had been previously disposed of on the merits for res judicata purposes; and (3) that it erred in not tolling the statute of limitations during the time Lemke 2 was pending on appeal.

12

The trial court denied the motion. With respect to Lemke's first argument, it stated that whether MERS and LoanCity had a private agreement that was different than what was reflected in the deed of trust was of no consequence to the issues of preclusion or limitations decided. With respect to Lemke's second argument, it stated Lemke's focus on the trial court's consideration of the motion to expunge the lis pendens in Lemke 2, "fail[ed] to appreciate that [the c]ourt identified numerous instances (not just the motion to quash) in the past where the question of foreclosure was raised and decided adverse to plaintiff." As to Lemke's third argument, the court stated, "plaintiff misunderstands tolling entirely. As noted, there is no right to bring an action, lose, appeal, and refile the same claim outside the statute of limitations based on how long it took the Court of Appeal to reject your claim."

Henry and Julie Martinez filed a motion to expunge a lis pendens Lemke had recorded against the property, which the court granted.

Lemke appealed the judgments.

DISCUSSION

I

*Preliminary Matters*

A.    <u>Issues regarding the form of the opening brief and citations</u>

We begin with a few reminders as to the rules that govern the content and format of briefs in the courts of appeal, and some general principals regarding how we conduct our review.

First, "California Rules of Court, rule 8.204(a)(1)(B), provides that a brief must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority.' 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not

13

clearly identified by a heading.' (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [];
see *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 835–836 []
[appellants forfeited challenge to trial court's ruling on a particular issue by failing to
address it in their opening brief]; *Richard v. Richard* (1954) 123 Cal.App.2d 900, 902–
903 [].)" (*Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th
538, 547.) When an argument is not properly identified by a heading in the argument in
an appellate brief, we need not consider it. (*Id.* at pp. 547-548.) " 'Th[is] well-settled
rule[] of appellate practice [is] not [a] mere technicalit[y]. [It] ensure[s] that opposing
parties are fairly apprised of contentions so as to afford a full and fair opportunity to
respond.' [Citation.]" (*LGCY Power, LLC v. Superior Court* (2022) 75 Cal.App.5th 844,
866.) " 'The purpose of requiring headings . . . in appellate briefs is [also] to "lighten the
labors of the appellate [courts] by requiring the litigants to present their cause
systematically and so arranged that those upon whom the duty devolves of ascertaining
the rule of law to apply may be advised, as they read, of the exact question under
consideration, instead of being compelled to extricate it from the mass." ' [Citations.]"
(*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1004.)

Peppered throughout the nonargument sections of Lemke's brief appear to be
possible arguments. One example of this is a sub section in the section describing the
allegations in the complaint, with a heading that simply reads "LoanCity Admissions"
(emphasis omitted) and indicates no specific position by Lemke regarding the import of
those admissions, but in the text under the heading Lemke seems to take issue with the
trial court's treatment of the impact of those admissions. Another example is in the
middle of a sub section regarding "Factual Allegations" (all caps removed), in which
Lemke takes issue with the reliability of the corporate assignment of deed of trust of
which the trial court took judicial notice. These potential arguments are not later
sufficiently addressed in the argument section of the brief. We do not consider them

14

here.  (See *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 [issue forfeited because it was not included in argument section of the appellant's brief].)

We note that even within the argument section of his brief, Lemke's use of headings and legal citations leave much to be desired.  We can see this particularly in the section regarding the applicability of the statutes of limitations.  The headings do not sufficiently identify the potential tolling exceptions that are the focus of his argument or the position he has taken with respect to those exceptions.  For example, a closer look at sections with headings that read "Legal Exceptions for Tolling or Suspending Statute of Limitations" and "Exceptions Suspending or Tolling Statute of Limitations" suggest that Lemke has taken the position that the statute of limitations in which he needed to bring this action was tolled by the litigation and subsequent appeal in Lemke 2.  Additionally, throughout the brief, when Lemke has cited to published case law the first time, he fails to provide a pin cite that can guide this court to the relevant portion of the opinion. Together, these omissions make discerning the scope of Lemke's arguments and his ability to support those arguments difficult.  If this was done to obscure the fact that Lemke's arguments are not particularly supportable, that is inappropriate to say the least. If this was done even though Lemke has confidence in the strength of his argument, his briefing is not in service to that confidence.

B.     Request for Judicial Notice

Lemke filed a request for judicial notice, asking this court to notice its docket in Lemke 2 appeal, case No. C079415.  We deferred ruling on the request.  We grant the request.  (Evid. Code, § 452, subd. (b).)

II

*Standard of and Burdens on Review*

"A demurrer tests the legal sufficiency of factual allegations in a complaint." (*Rakestraw v. California Physicians' Service, supra,* 81 Cal.App.4th at p. 42.)  The

15

standard of review on appeal from a dismissal after an order sustaining a demurrer is well established. "[W]e review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) We give the complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law. [Citation.]" (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) Legal questions that arise at the pleading stage include the interpretation of a statute or the application of a statutory provision to facts assumed to be true for purposes of the demurrer. (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 753-754.)

"In ruling on a demurrer, a court may consider facts of which it has taken judicial notice. (Code Civ. Proc., § 430.30, subd. (a).) This includes the existence of a document. When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable." (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9.) "[W]e disregard . . . allegations contrary to those judicially noticed facts." (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1329.)

"On appeal, the trial court's judgment is presumed correct, and the burden is on the Appellants to demonstrate reversible error. [Citation.] This is true even on de novo review . . . ." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708; see also *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554-555 [de novo review is limited to issues adequately raised and supported in an appellant's opening brief, and " ' "[t]he most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct." [Citation.] It is the appellant who bears the burden of overcoming that presumption.' [Citation.]"].) Thus, our review of a demurrer is de novo, but it is limited to issues that

16

have been adequately raised and supported in Lemke's brief. (*Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1096.)

III

*Res Judicata*

In his appeal, Lemke makes three efforts to persuade this court that res judicata should not apply to bar this action. First, he argues the trial court in Lemke 2 sustained the demurrer on the ground that the facts alleged were "uncertain," and that this was a technical dismissal, instead of one on the merits. Next, he argues new facts were alleged in this action that overcame the application of res judicata here. Finally, he argues the trial court improperly relied on the judgment in the unlawful detainer action and the expungement of the lis pendens in Lemke 2 in finding res judicata applied. None of these arguments are persuasive.

A.      Principles of Res Judicata

" 'As generally understood, "[t]he doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy." [Citation.] The doctrine "has a double aspect." [Citation.] "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]" [Citation.] "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates' " in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.]' " (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.)

"Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties" or parties in privity with them, "(3) after a final judgment on

17

the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN*); see also *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

When considering if res judicata is applicable, the phrase "cause of action" refers to "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken v. Philip Morris USA, Inc., supra,* 48 Cal.4th at p. 798.) "[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief.' (3 Witkin, [Cal. Procedure (2d ed. 1971)] Pleading, § 24, p. 1709; and see [Citations].)" (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.) Thus, "[t]o prevent piecemeal litigation, the doctrine of res judicata also applies to bar a second suit arising out of the same factual situation, involving matters which were relevant and within the scope of the first action, which thus *could* have been raised in the first suit." (*Duffy v. City of Long Beach* (1988) 201 Cal.App.3d 1352, 1357-1358; see also *Warga v. Cooper* (1996) 44 Cal.App.4th 371, 377-378 ["If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged"].) "The doctrine 'promotes judicial economy' because 'all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date' [Citation.]" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 92.)

"[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who

was a party in the first suit or one in privity with that party." (*DKN*, *supra*, 61 Cal.4th at p. 825.)

Here, we focus primarily on the claim preclusive impact of Lemke 2. Our focus is also narrowed by the scope of arguments made and not made by Lemke on appeal. (See *Davies v. Sallie Mae, Inc., supra,* 168 Cal.App.4th at p. 1096 [appellate review of a demurrer is limited to issues adequately raised and supported in Lemke's brief].) Accordingly, we note what arguments Lemke *does not make* on appeal. He does not argue that Lemke 2 and this action are not based on the same cause of action—i.e., he does not dispute that the actions are based on the same primary right. He does not dispute that the two actions involved the same parties or parties in privity with them. Indeed, DLJ Mortgage points out in its respondent's brief that Lemke did not dispute privity of parties or that the same primary rights are at issue it his opening brief, and Lemke says nothing to dispute this in the reply. Thus, here we focus on whether the judgment in Lemke 2 was a final judgment on the merits. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 ["We will not develop the appellants' arguments for them"].)

For purposes of claim preclusion, "[w]hether the prior judgment was on the merits depends upon the facts of the case and the reason for the ruling. ([*Kanarek v. Bugliosi* (1980) 108 Cal.App.3d 327, 330, 331, 334].) A judgment based upon the sustaining of a demurrer for technical or formal defects is not on the merits and thus is not a bar to the filing of the new action. (*Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52 [92 P.2d 804].) 'On the other hand, it is generally held that a demurrer which is sustained for failure of the facts alleged to establish a cause of action, is a judgment on the merits. However, this is true only if the same facts are pleaded in the second action [citation], or if, although different facts are pleaded, the new complaint contains the same defects as the former.' (*Kanarek v. Bugliosi*, *supra*, 108 Cal.App.3d at p. 334.)" (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 855; see also *Association of Irritated Residents v.*

19

*Department of Conservation* (2017) 11 Cal.App.5th 1202, 1220 [a judgement on the merits "may include a judgment of dismissal following a general demurrer or a dismissal motion if the disposition was plainly reached 'on a ground of substance' " ].)

### B.     Uncertainty

In his first argument regarding the trial court's res judicata findings, Lemke posits that a demurrer granted on the basis that a complaint is uncertain is not a decision on the merits, but rather a decision on procedural or technical grounds.  Both DLJ Mortgage and the bank defendants aptly point out that Lemke's focus on Lemke 2 trial court's finding that Lemke 2 complaint was "uncertain" ignores the other possible merits-based reasons Lemke 2 trial court had for dismissing the claim.  To wit, Lemke 2 court sustained the demurrer "for the reasons set forth in Defendants' demurrer and memorandum in support thereof."  And, it stated, "[t]he First Amended Complaint does not state facts sufficient to constitute a cause of action *and* is uncertain."  (Emphasis added.)  Thus, while uncertainty may have been one reason for the granting of the demurrer in Lemke 2, at a minimum, Lemke 2 complaint was also dismissed without leave to amend because it failed to allege facts sufficient to constitute a cause of action.

### C.     Purported New Facts

In his second argument regarding res judicata, Lemke claims he has cured any defects in Lemke 2 complaint by alleging new facts.

As a preliminary matter, we note in the section of the opening brief addressing this argument Lemke does not clearly articulate what exactly the new facts at issue are and how they cure the various defects identified in the demurrer to the in Lemke 2 complaint; i.e., he does not connect the dots in this argument.

In his introductory paragraph to his overall res judicata arguments, Lemke asserts "[d]enial of a claim on the basis of standing would be based on the merits and have a res judicata affect *only* if the issue of standing can never be cured."

20

We observe that to support this statement, Lemke cites to *Association of Irritated Residents v. Department of Conservation, supra,* 11 Cal.App.5th 1202 without providing a pin cite. Our review of the case also revealed it does not clearly support the statement. A search for the word "standing" in the opinion results in one sentence, where the court explains that "[j]usticiability thus 'involves the intertwined criteria of ripeness and standing.' " (*Association of Irritated Residents v. Department of Conservation, supra,* 11 Cal.App.5th at p. 1221.) Further down in the opinion, the court states, "in view of our discussion regarding res judicata and the concepts of mootness/ripeness, we believe that where a court decides that a claim is moot or unripe, and dismisses the claim on that basis, the resulting judgment of dismissal would be on technical or procedural grounds that are distinct from an actual determination of the substance of the claim. In short, such a judgment would not be on the merits." (*Id.* at p. 1224.)

In any event, in the section with the heading, "New Facts Overcome Res Judicata," Lemke asserts this case is analogous to the U.S. Supreme Court case of *Lawlor v. National Screen Service Corp.* (1955) 349 U.S. 322, 327-328, in which the Court found no res judicata bar to a subsequent action involving the same course of conduct that continued to occur after the judgment was entered in a prior action. Specifically, he claims this case is like *Lawlor* because it has "specific and factual allegations in which Appellant detailed the complex, deceptive manner of the financial transaction, in which he was able to finally unwind the different entities involved in the transaction, and in so doing, cured any purported 'standing' issue by proffering factual allegations [that] the [assignment of deed of trust] was void."

Presumably, the "new" facts Lemke claims have been alleged are the specific identity of DLJ Mortgage as the source of funds, and the existence of a private agreement between LoanCity and MERS that he alleged terminated MERS's authority to act under the deed of trust when the underlying debt was allegedly assigned to Credit Suisse. These facts are not "new" as contemplated by *Lawlor*, in which the court explained that

21

even though an earlier dismissed suit where judgment was entered in 1943 and a later suit involved, " 'essentially the same course of wrongful conduct' " the later suit was not barred, because "[t]he conduct presently complained of was all subsequent to the 1943 judgment. . . . While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." (*Lawlor v. National Screen Service Corp., supra,* 349 U.S. at pp. 327-328, fn. omitted.)

Here, Lemke is not trying to right a wrong that occurred after the entry of the judgment in Lemke 2. He is taking issue with the same loan, the same assignments and sales, and the same recorded documents he challenged in the first action.

Moreover, to the extent the allegations regarding DLJ Mortgage and the LoanCity/MERS agreement are cast differently than the facts alleged in Lemke 2, Lemke has failed to show how they make any substantive difference—i.e., how they cure defects in Lemke 2 complaint. For example, while in this action Lemke may have specifically identified DLJ Mortgage as the true source of his loan funds, in Lemke 2 he identified "Doe Investors" as the true source of funds and claimed he could identify them when given access to documents in the care of Lemke 2 defendants. Under either set of allegations the substantive impact of the allegations was the same: Lemke claims he was wronged because LoanCity and his true lender hid the true lender's identity from him. Lemke fails to explain how this minor recasting of the allegations regarding the "true lender" cured any of the defects identified in Lemke 2 complaint, and it seems very unlikely they cured anything.

Similarly, in this action the underpinning of Lemke's theory that the assignment of deed of trust was void rests on Lemke's allegations that a private agreement between LoanCity and MERS had terminated MERS's authority to act as an agent, and LoanCity did not authorize MERS to make the assignment. The complaint also alleges that when an Assistant Secretary of MERS executed the assignment of deet of trust, he

22

"intentionally, and falsely, alleged that MERS as nominee of LoanCity and its successor and assigns, was transferring interest in the [deed of trust] to US Bank." In Lemke 2, the operative complaint also characterized the assignment as containing "materially false and misleading representations of fact" and as "void." (Emphasis omitted.) Further, it alleged that at the time of the assignment, MERS no longer maintained an agency relationship with LoanCity and could no longer act on behalf of LoanCity. Again, the substantive impact of these allegations is the same: Lemke alleges the assignment was void because MERS lacked the authority to act, and he alleges that actions documenting and recording the assignment were false and misleading.

In short, in Lemke 2, Lemke filed a complaint that contained allegations with the same substantive impact as the complaint he filed here. The trial court in Lemke 2 considered that complaint and sustained a demurrer to it without leave to amend on numerous grounds. Those grounds included uncertainty *and* that "[t]he First Amended Complaint does not state facts sufficient to constitute a cause of action" *and* "reasons set forth in Defendants' demurrer and memorandum in support thereof." In turn, the papers filed in support of the demurrer in Lemke 2 included at least four arguments that applied to the whole of that complaint beyond the uncertainty challenge. Lemke then filed a motion for reconsideration with leave to amend—adding causes of action for tortious interference with contract, fraud and deceit, and unjust enrichment—and that request was denied. Lemke appealed the trial court's decision in Lemke 2, and argued he ought to have been granted leave to amend his complaint. That appeal was unsuccessful. Now, with this action, Lemke is trying for another bite at the apple, claiming that the existence of "new" facts he has alleged save him from the res judicata impact of the prior action. But for new facts to serve as a basis for getting around the principles of res judicata, those facts need to be free of the defects of the prior complaint, (see *Boyd v. Freeman, supra,* 18 Cal.App.5th at p. 855), and Lemke fails to convince us that these "new" facts cured those defects.

23

The lack of change of substance due to the purportedly "new" facts alleged is made clear when one examines Lemke's argument that the new allegations cure defects in Lemke 2 related to "standing." Lemke argues the "new" facts cured prior defects because (1) they cured a "standing" issue by proffering factual allegations that the transfer was void; and (2) *Yvanova v. New Century* (2016) 62 Cal.4th 919, 942-943, allows that a "loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." This argument is unavailing and disingenuous, and his treatment of *Yvanova* in the trial court demonstrates that these purported new facts do not really alter the substance of the allegations in the complaint.

In his argument for a new trial below, Lemke cited *Yvanova* when he argued that the allegations regarding MERS authority to make assignment of deed of trust cured standing because though "at the time of his previous complaint [he] had no standing to challenge the void assignment; there was a change in prevailing law pending the appeal and he now has standing to challenge the foreclosure based on a void assignment." Thus, with his argument regarding the "standing" issue, Lemke is not really attempting to allege new facts that cure a factual defect that existed in Lemke 2 complaint, he is trying to refile an action which is substantively the same and was decided against him. He is attempting to take advantage of a change in the law even though the prior action has resulted in a final judgment against him on the merits on the basis that there has been a later change in the law. Nothing Lemke points to suggests he can revive an action disposed of in a final judgment and appeal because the law has since changed.

24

D.        Reliance on Lis Pendens and Unlawful Detainer

Lemke argues that in this action the trial court improperly relied on the unlawful detainer judgment and lis pendens expungement to find res judicata. DLJ Mortgage observes that this argument ignores the scope and breadth of the trial court's ruling below. We agree. Specifically, we note the trial court's response to a similar argument raised by defendant in his motion for a new trial. The court said that in focusing an argument on whether the lis pendens expungement could serve as a basis for res judicata, Lemke "fail[ed] to appreciate that [the] court identified *numerous instances* (not just the motion to quash) in the past when the question of foreclosure was raised and decided adverse to plaintiff." (Emphasis added.) Notably, the court highlighted that the one action Lemke chose to focus on in claiming the court erred in considering it was only one of multiple instances where a decision adverse to Lemke regarding the propriety of the foreclosure was at issue.

Hence, in identifying the expungement and unlawful detainer action, the court was merely highlighting the fact that in addition to having the opportunity to address the primary right at issue here considered on the merits in Lemke 2, Lemke has also had ample opportunity to present arguments on issues that fall within the scope of the litigation. And this point was a fair one. In *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255-256, our Supreme Court recognized that when a claim asserted in an action following an unlawful detainer under Code of Civil Procedure section 1161a, which provides a procedure for removing someone from property after a foreclosure sale as described in Civil Code section 2924, et seq., encompasses activities not directly connected with the conduct of the sale, applicability of the res judicata doctrine, either as a complete bar to further proceedings or as a source of collateral estoppel is not always clear. (See also, Code. Civ. Proc., § 1161a, subd. (b)(3).) However, the Court did recognize that courts have held that a fraud or quiet title suit founded upon allegations of irregularity in a

25

trustee's sale brought subsequent to an unlawful detainer action brought under Code of Civil Procedure section 1161a are barred by the prior unlawful detainer judgment. (*Vella v. Hudgins, supra,* 20 Cal.3d at p. 256.) Thus, at least with respect to some issues, it is not unreasonable for a court to treat a prior unlawful detainer action following a foreclosure sale as having a preclusive effect.

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal under California Rules of Court, rule 8.278(a).

                                                  _____

                                                  HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

KEITHLEY, J.\*

---

\* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution